IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DOUGLAS DYNAMICS, LLC,<br><br>    Plaintiff<br><br>v.<br><br>BUYERS PRODUCTS COMPANY,<br><br>    Defendant | )<br>)<br>)<br>) CIVIL ACTION NO. 3:09-cv-00261<br>)<br>) Hon. William M. Conley<br>)<br>)<br>) |

**DECLARATION OF RICHARD F. BERO IN SUPPORT OF DOUGLAS'
RENEWED MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37(b)**

I, RICHARD F. BERO, declare under penalty of perjury as follows:

## I. BACKGROUND

1. I am over eighteen years of age, have personal knowledge of the matters set forth herein, and each of them is true and correct.

2. I make this declaration in support of Douglas' Renewed Motion for Sanctions.

3. I will refer to the plaintiff, Douglas Dynamics, LLC as "Douglas." I will refer to defendant, Buyers Products Company as "Buyers."

4. I further refer to the Declaration of Attorney Aaron T. Olejniczak in support of Douglas' Renewed Motion for Sanctions under Fed. R. Civ. P. 37(b) ("Olejniczak Declaration"), which provides true and correct copies of the deposition transcript of the deposition of Marian Mantel dated July 28, 2010, and the spreadsheets produced by Buyers on August 16, 2010, which are respectively attached as Exhibits A and D-E to the Olejniczak Declaration.

5. I have reviewed the transcript of the deposition of Marian Mantel, Buyers' controller, dated July 28, 2010, and the spreadsheets produced by Buyers on August 16, 2010.

6. My curriculum vitae, including a list of all my publications and the cases in which I have testified during the preceding four years, is attached hereto as Appendix A. I was retained in this litigation at the rate of $450.00 per hour.

## II. DAMAGES IN A PATENT INFRINGEMENT LAWSUIT

7. With respect to damages in a patent infringement lawsuit, it is my understanding that, upon a finding for the patent owner, the court will award the patent owner damages adequate to fully compensate the patent owner for the infringement.

8. It is my further understanding that damages are awarded to ensure that the patent owner receives full compensation for any damages suffered as a result of the infringement.

9. As a result, for the use made of the invention by the infringer, such damages may include lost profits, a reasonable royalty, or some combination thereof.

10. With respect to the calculation of lost profits and/or a reasonable royalty, it is my understanding that the court may receive expert testimony as an aid to the trier of fact in the determination of damages or of what lost profits and/or royalty would be reasonable under the circumstances.

11. In determining what lost profits and/or royalty would be reasonable under the circumstances, I typically analyze a number of pieces of financial information, including the infringer's unit sales, sales dollars and profits related to sales of the infringing device.

12. In determining the amount of lost profits and/or what royalty would be reasonable under the circumstances, I also typically analyze the unit sales, sales dollars and profits of products related to the infringing device, such as unpatented components sold with an infringing apparatus, as well as derivative or convoyed sales, such as accessories, spare parts, replacement parts or related services.

### III. FINANCIAL INFORMATION GENERALLY RELIED UPON

13. To substantiate the accuracy of the infringer's sales and profit calculations for the sale of infringing goods and services, I regularly review and analyze various types of data, information and calculations underlying those calculations, including audited financial statements (or another form of financial statements prepared, compiled and/or reviewed by an independent third-party accounting firm), detailed internal financial statements, product line financial statements or summaries, profit margin reports, and various types of readily available accounting and financial information concerning prices, sales dollars and sales units, material costs, labor costs, other manufacturing costs, inventory, overhead, SG&A (selling, general and administrative) expenses, and supporting data.

14. This information is generally analyzed to substantiate the infringer's unit sales, sales dollars and profits for the infringing products and/or components thereof and corresponding products or services, including, but not limited to, average selling prices, costs, and profits by, for example, examining the company's detailed financial and accounting information identified above.

15. In the past, to substantiate the accuracy of an infringer's unit sales, sales dollars and profit calculations for the sale of infringing goods and/or components thereof and corresponding products or services, I have been provided a copy of the infringer's data in electronic form.

### IV. BUYERS' FINANCIAL INFORMATION IN THIS CASE

16. I have been retained by Andrus, Sceales, Starke, & Sawall LLP, counsel for plaintiff in the above-referenced lawsuit, as an expert to provide my opinion concerning the damages adequate to compensate the plaintiff for defendant's infringement of U.S. Patent Nos. 4,999,935; 5,353,530; RE 35,700; 5,420,480 and 6,944,978.

17. In the above-referenced lawsuit, I have been provided a one-page summary of Buyers' financial information, which is attached as Exhibit 44 to the deposition of Marian Mantel. This one-page summary was prepared unilaterally by Buyers and includes Buyers' statement of profit allegedly related to the aggregate of all SnowDogg snowplow sales dollars for the time periods in question.

18. The one-page summary does not include units sold.

19. It is my understanding that Buyers has not produced, and I have not received a copy of any Buyers' audited financial statements, detailed internal financial statements, product line financial statements, profit margin reports or anything comparable for the relevant time periods.

20. I have been provided with more than 5,000 pages of redacted invoices produced by Buyers. The invoices allegedly capture Buyers sales dollars and units of snowplow components.

21. The redacted invoices do not include cost or profit information. They also do not include sales units or sales dollars information for corresponding products or services.

22. Ultimately, I have not been provided sufficient information to substantiate the accuracy of Buyers' profit calculations for the sale of the infringing goods and services shown on the one-page summary provided by Buyers (Mantel Dep. Ex. 44).

23. Additionally, I have not received unredacted invoices sufficient to ascertain the amount of derivative or convoyed unit sales or sales dollars that were made.

24. Finally, it is my understanding that Ms. Mantel did summarize the total sales dollars of the infringing products on a separate spreadsheet that was not identified until Ms. Mantel's deposition on July 28, 2010, and I understand was just recently produced in .tiff image

format on August 16, 2010. However, in the format produced (.tiff image), the total amount of units and dollars sold is not provided by product code, part number, product line or by year.

25. Because I was not provided with this information before August 16, 2010, my office spent over 240 hours and had to incur significant costs to input and summarize the more than 5,000 pages of redacted invoices produced by Buyers in an attempt to understand the number of units and sales dollars of the infringing product.

26. I declare under penalty of perjury that the foregoing is true and correct.

Dated this __18th__ day of August, 2010.

RICHARD F. BERO