IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DOUGLAS DYNAMICS, LLC,

                        Plaintiff,                      OPINION AND ORDER

    v.

                                                           09-cv-261-wmc

BUYERS PRODUCTS COMPANY,

                        Defendant.

---

Ahead of the final pretrial conference hearing on Thursday, October 7, 2010, the parties both filed motions in limine. After limited, oral argument on several of the motions at the Thursday hearing, the court ruled orally on those motions, informing the parties that a written opinion confirming the court's oral rulings would follow the next day. This is that written opinion.

## I. Plaintiff's Motions In Limine

    A. Motions in limine nos. 1-4

Plaintiff's motions in limine 1 (dkt. #263) and 2 (dkt. #265) were both unopposed and granted. Motion in limine 3 (dkt. #267) concerned precluding defendant from supplementing its expert reports regarding the validity of plaintiff's United States Patents Nos. 6,944,978 (the '978 patent), 4,999,935 (the '935 patent), and 5,420,480 (the '480 patent). The validity of the '978 and '480 are no longer at issue in the case. Further, defendant explained that it would not challenge the validity of the '935 patent. Accordingly, plaintiff's motion in limine 3 was denied as moot.

Plaintiff's motion in limine 4 (dkt. #269) requested preclusion of argument and testimony about opinion of counsel. In light of the court's ruling on willful infringement, the parties agreed that the issue is no longer relevant. Motion in limine 4 was, therefore, denied as moot.

B. Motion in limine no. 5

In its fifth motion in limine (dkt. #271), plaintiff sought to exclude evidence relating a March 2002 cross-license agreement involving plaintiff's United States patent no. Re. 35,700 (the '700 patent). The license was the result of a settlement plaintiff entered into regarding a different patent infringement case. Because determining a reasonable royalty is a fact-specific inquiry dependent on the consideration of many factors, see *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), even licenses arising from resolution of unrelated patent litigation can ordinarily be considered, see *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010). In this case, however, the '700 patent is no longer at issue. Relevance of a license of the '700 patent is, therefore, extremely weak. Also, the probative value of that license is substantially outweighed by unfair prejudice to plaintiff and by the likely confusion it would create for the jury. Thus, the court granted plaintiff's fifth motion in limine.

C. Motion in limine no. 6

Plaintiff's motion in limine 6 (dkt. #273) requested that defendant be precluded from arguing plaintiff's United States patent no. 5,353,530 (the '530 patent) is invalid as

obvious under 35 U.S.C. § 103.[1] Plaintiff argued that defendant's expert, Dr. Prahl, failed to provide the necessary motivation for combining prior art that allegedly make the '530 patent obvious. This argument conflicts with the Supreme Court's determination in *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007). In *KSR*, the Court explained that although the reason prompting a person of ordinary skill in the art to combine elements in a way claimed by the new invention can be important in the obviousness analysis, determination of that reason using the "teaching, suggestion or motivation test" should not be done in a rigid way. 550 U.S. at 418. In other words, the obviousness determination is a common sense one that takes account of the inferences and creative steps that a skilled artisan would employ. *Id.* at 420.

Prahl's expert report contains a comparison of claim elements to the prior art. This is more than a mere list of prior art references followed by a general conclusion. *See Innogenetics, N.V. v. Abbot Labs.*, 5122 F.3d 1363, 1373-74 (Fed. Cir. 2008). Although defendant will need to provide some additional evidence that a skilled artisan would be motivated to combine prior art elements to obtain the claimed invention, Prahl's opinions are sufficient to permit defendant to at least make an obviousness argument at trial. Accordingly, plaintiff's sixth motion in limine was denied.

D. Motions in limine nos. 7-9

---

[1] Plaintiff also requested preclusion regarding the obviousness of other patents, but the validity of those patents is no longer at issue and, therefore, there is no need to address the request.

Plaintiff's motion in limine 7 (dkt. #275) requested preclusion of arguments and evidence about claims construction being provided to the jury. Because claims construction is an issue of law, this motion was granted. Plaintiff's eighth motion in limine (dkt. #277) was denied as moot because it raised questions about the '480 patent, which is no longer at issue in this case. Finally, plaintiff's motion in limine 9 (dkt. #279) was withdrawn.

E. Motion in limine no. 10

In its motion in limine 10 (dkt. #281), plaintiff requested preclusion of both Dr. Prahl's expert report and his expert opinion testimony. The request to preclude admission of the expert report into evidence was granted. Expert reports are hearsay and, further, need not be admitted into evidence when the expert will testify to the opinions contained in the report. The request to preclude Prahl's expert opinion testimony, however, was denied. Prahl is a qualified expert, his reasoning or methodology is reliable and his testimony will assist the trier of fact in determining issues of infringement and invalidity. This is all that is required under Fed. R. Evid. 702 and *Daubert v. Merrel Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993).

Plaintiff's argument that Prahl's opinion is unreliable because defendant's counsel created the first draft his report is off the mark. *See* Fed. R. Civ. P. 26(a)(2)(B), committee note 1993 (the rule "does not preclude counsel from providing assistance to experts in preparing the reports"). Moreover, plaintiff's concerns about Prahl's thoroughness in reviewing relevant materials do not make Prahl's opinion unreliable.

Instead, they are issues that may be raised to the jury to challenge the weight Prahl's opinions should carry.

  E. <u>Motions in limine nos. 11-13</u>

Plaintiff's motions in limine 11-13 (dkt. ##323, 325 & 327) all relate to defendant's expert on damages, Andrew Finger. Plaintiff's eleventh motion challenges Finger's opinions concerning the alleged market segmentation of the snowplow market caused by price differentiation between plaintiff's and defendant's snowplows. Plaintiff points out that Finger could not provide actual percentages for how many consumers in each segment would not have bought one of plaintiff's snowplows because of their high price even if defendant's snowplows were not on the market. Plaintiff argued that this failure to provide actual percentages made Finger's opinion unreliable and, thus, inadmissible.

Plaintiff's request to preclude was granted only in so far as Finger cannot now testify to actual percentages for his market segmentation theory. The remainder of the motion was denied and Finger may testify in accordance with his report and deposition. Specifically, he may opine about consumer behavior and his determination that some consumers in the snowplow market would not have bought plaintiff's snowplows because of their high price regardless of the presence of defendant's snowplows in the market.

Plaintiff withdrew its motion in limine 12. Plaintiff's thirteenth motion in limine relates to Finger testifying about a design-around the patents in suit. Finger can testify in accordance with his expert report. In his report he mentions the availability of acceptable alternatives to plaintiff's snowplows that were in the market. He, however, did not

5

provide much detail. (*See* Finger's Expert Report, dkt. #306, at 7-13.) Accordingly, plaintiff's motion in limine 13 was granted to the extent that Finger would attempt to testify about opinions or details concerning a design-around that are not in his original expert report. In all other respects, the motion was denied.

## II. Defendant's Motions In Limine

### A. Motions in limine nos. 1-3

Defendant's first motion in limine (dkt. #252) sought to preclude evidence of claim construction. The motion was granted for the same reasons plaintiff's motion in limine 7 was granted. One important caveat is that although exhibits that were used in claim construction will certainly not be admitted as evidence and given to the jury, the parties are not prohibited -- and in fact are encouraged -- to use demonstrative exhibits of claims and patent figures to help illustrate important ideas about the patent claims to the jury, provided copies have been provided in advance to opposing counsel.

Defendant's second motion in limine (dkt. #253) was denied as moot. As for its third motion in limine (dkt. #254), which relates to precluding the submission of deposition testimony into evidence, it was granted with two limitations. First, if statements are taken from the deposition of a party opponent, it can be admitted into evidence. Second, although the deposition documents are not themselves admissible, the contents of the documents may be read into the record as designated by the parties.

### B. Motion in limine no. 4

Defendant's fourth motion in limine (dkt. #255) requested excluding evidence pertaining to conduct during discovery.  The motion was granted with the limitation that some evidence of such conduct may be permitted *if* defendant opens the door to such evidence by offering evidence challenging plaintiff's damages claims in a manner that would require evidence about discovery conduct in rebuttal.  Any claim that the door has been "opened" must, however, be addressed first to the court outside the jury's hearing.

C. Motion in limine no. 5

In its fifth motion in limine (dkt. #256), defendant sought to preclude its responses to plaintiff's discovery requests.  The motion was denied as to defendant's specific, material responses only, because such responses are admissions by a party opponent.  The parties are encouraged to meet and confer to redact portions of the defendant's responses that are not material and substantive, such as its objections.

D. Motion in limine nos. 6-9

In motion in limine 6 (dkt. #257), defendant requested the exclusion of several documents not produced during discovery.  The motion was granted only with respect to the newer, updated version of plaintiff's Fisher Minute Mount 2 Owner's Manual.  Motion in limine 7 (dkt. #258) requested the exclusion of expert reports.  That motion was granted for the same reasons as plaintiff's motion in limine to preclude defendant's expert reports from evidence was granted.  Defendant's motion in limine 8 (dkt. #259) was denied as moot in light of the court's ruling on defendant's motion in limine 10.

Finally, plaintiff's ninth motion in limine (dkt. #260), which requested the exclusion of testimony from Bob McCormick because he was not listed as a witness until after discovery, was granted. Accordingly, absent a showing by plaintiff of unfair surprise that would require McCormick's testimony, he is precluded from testifying.

### E. Motion in limine no. 10

In its tenth motion in limine (dkt. #337), defendant sought to preclude evidence of damages based on alleged lost profits and to limit evidence on reasonable royalties. That motion was granted. Defendant pointed to the following statements made by plaintiff's financial expert, Richard Bero, at his deposition to argue that plaintiff is no longer entitled to lost profits and that it is also limited to a 1 to 2% royalty.

> Q: If only the '530 patent is infringed, what is the amount of lost profits in your opinion Douglas would be entitled to?
>
> BERO: If the '700 patent is not at issue, I believe there would not be lost profit damages.
>
> Q: And if only – one second. Just so I have it all cleared up, and similarly, if only the '978 patent, a third of the attachment systems patents is infringed, is it your opinion in that case there would be no lost profits?
>
> BERO: Yes.
>
> . . . .
>
> Q: If the '700 patent is not infringed, what would the reasonable – but the '978 and '530 are infringed, what would be the amount of reasonable royalty damages?
>
> BERO: The '978 and '530, well, in my estimation, those patents are incremental improvements on an existing product. They would generally be considered what I would describe as a minor improvement. So the royalty rates associated with those generally – and it would be implied to the entire snowplow assembly device because that's what these technologies

> generally relate to is taking on and off the system. I would – I would expect those rates to be somewhere in the one to two percent range.

(Bero Dep., dkt. #334, at 140:23-141:11; 142:17-143:11).

In its brief, and at the hearing, plaintiff argued that it should not be precluded from arguing for lost profits or a greater royalty because Bero "is entitled to clarify his testimony in light of the Court's new claim construction." (Pl.'s Opp. Br., dkt. #342, at 1.) The court disagrees. First, the court does not agree that it provided any new claim construction for the '700 patent. The '700 patent requires a specific configuration in achieving its core invention, that being removal of the entire plow assembly from the vehicle as a unit without leaving much, if anything, attached to the vehicle. The court merely clarified the required configuration.

Second, regardless of any change in construction of the '700 patent, nothing changed with respect to the '530 patent. In other words, the invention in the '530 patent was always the same and as such, plaintiff's expert was aware of the importance of the invention and calculated damages accordingly. Bero could have considered or found other aspects of the '530 patented invention important or deserving of more damages, but he did not.

Finally, even assuming there was a change in claim construction, plaintiff was aware that defendant was making arguments that, if accepted by the court, would result in noninfringement of the '700 patent as well as infringement of other of the patents-in-suit. With this knowledge, plaintiff could have discussed with its expert the effects such a ruling would have on its damages calculation and the expert could have configured an alternative lost profits damages calculation based on the infringement on either the '530

or '987 patents. Plaintiff did not do this and, instead, its expert hinged his entire opinion for lost profits on infringement of the '700 patent. Bero's narrow opinion is the foundation of plaintiff's damages argument, including damages for lost profits, and plaintiff is limited to those opinions.

Bero unequivocally explained that noninfringement of the '700 patent meant no lost profit damages for plaintiff and, therefore, plaintiff cannot argue for such damages now that it has been determined that the '700 patent is not infringed. Bero also explained that damages in the form of a reasonable royalty would be limited to between 1 and 2 percent if the '700 patent were not infringed but other patents-in-suit were infringed. Accordingly, plaintiff is limited to arguing as much at trial.

F. <u>Motion in limine no. 11</u>

Plaintiff's motion in limine 11 (dkt. #457) was held over and granted in part and denied in part in a separate text only order today.

Entered this 8th day of October , 2010.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge