CONFIDENTIAL – ATTORNEYS' EYES ONLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

DOUGLAS DYNAMICS, LLC,

      Plaintiff,

v.                                          Civil Action No. 09-261

BUYERS PRODUCTS COMPANY,

      Defendant.

SECOND SUPPLEMENTAL EXPERT REPORT OF RICHARD F. BERO, CPA, CVA

January 17, 2014

CONFIDENTIAL – ATTORNEYS' EYES ONLY

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

    A. Assignment ............................................................................................... 1

    B. Basis for opinions .................................................................................... 2

    C. Trial .......................................................................................................... 3

    D. Expert experience and compensation ...................................................... 4

    E. Basic damages assumptions ..................................................................... 4

II. SUMMARY OF THE '700 PATENT .................................................................. 4

III. SUPPLEMENTAL DAMAGES OPINIONS AND BASIS ................................ 5

    A. Supplemental Opinion: Market share lost profits damages (net of the jury's verdict) approximate $■■■■■■■■■ resulting from the infringement of the '700 patent. ....................................................................................... 6

        1. Buyers' infringing sales through April 15, 2011 – approximately ■■■ million in sales and approximately ■■■ snowplow assembly units subject to lost profits. ..................................... 6

        2. Updated Douglas information .................................................... 7

    B. Supplemental Opinion: A reasonable royalty rate for the infringement of the '700 patent is ■■■ of Buyers' snowplow sales. Corresponding market share reasonable royalty damages approximate ■■ million. In the alternative to market share damages, reasonable royalty damages approximate ■■ million from the infringement of the '700 patent. ..................... 8

        1. ■■■ royalty rate for the pioneering '700 patent .................................... 8

IV. CONCLUSION ..................................................................................................... 9

**I.     INTRODUCTION**

    **A.     Assignment**

I have been asked to update my expert opinions on damages issues specific to U.S. Patent No. RE 35,700 (the "'700 patent") on behalf of the Plaintiff in relation to *Douglas Dynamics, LLC v. Buyers Products Company.* In April 2009, Plaintiff Douglas Dynamics, LLC ("Douglas") alleged that Buyers Products Company ("Buyers") infringed the '700 patent as well as the following four United States Patents assigned to Douglas: U.S. Patent Nos. 4,999,935 (the "'935 patent"); 5,353,530 (the "'530 patent"); 5,420,480 (the "'480 patent"); and 6,944,978 (the "'978 patent").[1] Douglas' infringement claims stem from Buyers making, using, selling, offering for sale and / or importing its SnowDogg line of snowplows.[2]

On August 25, 2010, I provided an expert report (the "Bero Report") on behalf of Douglas in this matter in which I calculated damages through March 2010 relating to Buyers' infringement of the five Douglas patents listed above. I also provided a supplemental expert report on October 6, 2010 (the "Supplemental Bero Report") that updated my damages calculations estimated through October 15, 2010.

The '700 patent at issue in this matter is one of the three patents referred to as the Attachment / Detachment Patents in both of my reports, along with the '530 and '978 patents.[3] I understand that the '700 patent is the pioneering Attachment / Detachment Patent and the '530 and '978 patents are incremental improvement Attachment / Detachment patents.[4]

I have now been asked to update my damages calculations specific to the pioneering '700 Attachment / Detachment Patent for the following three reasons:

    1.    The Federal Circuit's May 21, 2013 ruling that directed the Court to enter summary judgment of infringement in favor of Douglas on the '700 patent;[5]

---

[1] Compl.
[2] Compl. 1-7.
[3] Bero Report 7.
[4] Bero Dep. 43-44 and 134-135; Bero trial testimony 3-C-28; Bero Dep. 142-143; Bero trial testimony 3-C-31.
[5] Federal Circuit ruling, May 21, 2013. I understand this ruling overturned the Court's October 1, 2010 previous ruling of non-infringement of the '700 patent – see Opinion and Order on Infringement dated October 1, 2010 at 1-2. I have also noted that the Federal Circuit's ruling addressed damage topics related to the '530 and '978 patents that were found to be infringed at the October 2010 trial, but for purposes of this report, I have not been asked to address these issues at this time.

2. Buyer's ongoing sales of products accused of infringing the '700 patent through the April 15, 2011 expiration of the '700 patent; and

3. An October 2010 jury verdict that awarded Douglas ▮▮▮ in royalty damages for the '530 Attachment / Detachment Patent and $▮▮▮ in royalty damages for the '978 Attachment / Detachment Patent (i.e., for combined total royalty damages of approximately $▮▮▮ for these two incremental improvement Attachment / Detachment Patents).[6]

In addition to my two reports, on September 24, 2010, I provided deposition testimony pertaining to all five of the patents at issue in this matter. On October 14, 2010, I provided damages testimony at trial relating to both the '530 and '978 Attachment / Detachment Patents, recognizing that these two patents represented incremental improvement Attachment / Detachment Patents and that the '700 patent was the pioneering Attachment / Detachment Patent (and not subject to damages at that trial).[7] As noted above, the jury awarded Douglas $▮▮▮ in royalty damages for the '530 Attachment / Detachment Patent and $▮▮▮ for the '978 Attachment / Detachment Patent, for a combined total royalty damages of approximately $▮▮▮.[8]

Subsequent to the October 2010 trial, I understand that Douglas appealed the ruling of non-infringement of the '700 patent. On May 21, 2013, the Federal Circuit issued a ruling that I understand overturned the Court's previous ruling of non-infringement of the '700 patent, and directed the Court to enter summary judgment of infringement in favor of Douglas on the '700 patent.[9]

B. **Basis for opinions**

The basis for my opinions related to the '700 patent are set forth in the Bero Report. Subsequent to the issuance of the Bero Report and the Supplemental Bero Report, I have considered the following information:

- additional legal filings and related exhibits

- updated Buyers sales data

- additional documents produced / provided by the parties

---

[6] Special Verdict Damages form filed October 15, 2010.
[7] At trial, the jury also returned a verdict of non-infringement for the '935 patent, so I did not testify about damages related to the '935 patent. I understand that Douglas did not appeal this verdict.
[8] Special Verdict Damages form filed October 15, 2010.
[9] Federal Circuit ruling, May 21, 2013. I have noted that this Federal Circuit ruling also addressed damage topics related to the '530 and '978 patents that were found to be infringed at the October 2010 trial, but for purposes of this report, I have not been asked to address these issues at this time.

- additional deposition testimony and related deposition exhibits

- expert reports of Andrew D. Finger, CPA/CFF, dated:

    - September 15, 2010

    - October 5, 2010

- additional discussions with Douglas personnel:

    - Jerry Depies, Platform Manager

    - Steve Klug, General Manager

    - Bob Young, Controller and Treasurer

- the Court's October 1, 2010 Opinion and Order

- trial testimony and trial exhibits from the October 2010 trial

- the Federal Circuit's May 21, 2013 decision

- additional independent research

- my skills, knowledge, professional background, education and work experience

A detailed list of data and other information I have considered at this time in developing my opinions is included as **Supplemental Attachment 1**. In the event that additional relevant information becomes available after the issuance of my Report, I will incorporate such information as necessary. I also may incorporate additional information in response to any expert report or opinions proffered on behalf of Buyers.

**C. Trial**

In preparing for trial, I may prepare demonstrative exhibits based upon information included in the Bero Report, the Bero Supplemental Report, this Report or additional information that becomes available hereafter.

### D. Expert experience and compensation

I am a certified public accountant and a certified valuation analyst and the Managing Director of The BERO Group.[10] My experience and qualifications are set forth in the Bero Report. My curriculum vitae, including a list of my testimonial experience in the last four years and publications in the last ten years, is included as **Supplemental Attachment 2**.

Compensation to The BERO Group for professional services provided in preparing this report is based on our customary hourly fees as set forth in the Bero Report.

### E. Basic damages assumptions

My basic damages assumptions are included in the Bero Report.[11] For a further discussion of the sales information Buyers has provided, see the discussion below and **Schedule A**.

## II. SUMMARY OF THE '700 PATENT

As described in the Bero Report and as noted above, I collectively referred to the '530, '700 and '978 patents as the "Attachment / Detachment Patents."[12] My analysis calculating a combination of lost profits and reasonable royalty damages for the Attachment / Detachment Patents was based on the '700 patent providing the distinguishing advantage of the simple and easy way to connect and disconnect the entire snowplow assembly.[13] In my deposition and at trial, I described the '700 patent as the pioneering or foundational Attachment / Detachment Patent,[14] whereas the '530 and '978 patents were incremental improvements on the '700 patent.[15]

In the Bero Report, I determined that a reasonable royalty for the collective Attachment / Detachment Patents was ▇% of Buyers' infringing snowplow sales.[16] The '700 patent represents the majority of the Attachment / Detachment Patents' ▇% reasonable royalty rate. In my deposition and at trial, I testified that the reasonable royalty rates for both the '530 and '978 patents would be between ▇% and ▇% of Buyers' infringing snowplow sales for each patent.[17] Based on the jury verdict noted above, the approximate effective royalty rate awarded for the '530 and '978

---

[10] The BERO Group was formerly a division of Corporate Financial Advisors, LLC, a firm I co-founded in 1995.
[11] Bero Report 3.
[12] Bero Report 7.
[13] Bero Report 8.
[14] Bero Dep. 43-44 and 134-135; Bero trial testimony 3-C-28 and 3-C-31.
[15] Bero Dep. 142-143; Bero trial testimony 3-C-31.
[16] Bero Report 49.
[17] Bero Dep. 142-143; Bero trial testimony 3-C-25 through 3-C-27.

patents was approximately ■% for each patent, or a combined ■% of Buyers' infringing snowplow sales.[18] The '700 patent therefore has an approximate effective royalty rate of ■%.[19]

### III.  SUPPLEMENTAL DAMAGES OPINIONS AND BASIS

As described in the Bero Report, it was my opinion and remains my opinion that Douglas has incurred lost profit damages on a market share basis as a result of Buyers' alleged infringement of the Attachment / Detachment Patents.[20] Consistent with my opinion in the Bero Report, Douglas has incurred lost profits pertaining to a portion of the infringing Buyers snowplows sold, while the remaining infringing Buyers' sales are subject to a reasonable royalty.

For purposes of updating my damages calculations, I have calculated the market share lost profits and reasonable royalties consistently with how I calculated these damages in the Bero Report. In the Bero Report, I calculated that Douglas would have made 50% of Buyers' infringing sales, based on the number and types of lift frame units Buyers sold.[21] I have also accounted for royalties awarded by the jury for the '530 and '978 patents. My updated analyses showing my calculations of Douglas' lost profits are included on **Schedules A** and **D1**.

The following summarizes the approximate amount of these market share damages, including the combined lost profits and reasonable royalty damages, based on Buyers' infringing sales through April 15, 2011, net of the jury verdict:[22]

| | |
|---|---|
| Lost Profits | $ ■ |
| Reasonable Royalty | $ ■ |
| Total Market Share Damages | $ ■ |

---

[18] **Schedule G2**.
[19] **Schedule G1**.
[20] Bero Report 35-47.
[21] As described in more detail in the Bero Report 35-47. As noted in the Bero Report, I refer to the units subject to lost profits as snowplow assemblies subject to lost profits.
[22] **Schedule A**. Assuming Douglas is awarded market share lost profits, these damage amounts would be reduced in recognition that Douglas has already been paid royalties of approximately $■ on Buyers' infringing sales for the '530 and '978 patents. For example, if Douglas receives lost profits on 50% of the infringing Buyers units as I calculate under the market share approach, I assume Buyers would receive a credit against these lost profits of approximately 50% of the royalties it has paid on these units, or approximately $■, and the total lost profits amounts net of these credits would approximate ■. See **Schedule A** for this calculation. For reasonable royalty damages, I have reduced the royalty rate to ■%, as described below.

In the alternative to market share damages, I have also been asked to quantify damages solely in the form of a reasonable royalty, based on Buyers' infringing sales through April 15, 2011:[23]

      Alternative Damages – Reasonable Royalty   $▇▇▇▇

**A.    Supplemental Opinion: Market share lost profits damages (net of the jury's verdict) approximate $▇▇▇▇ resulting from the infringement of the '700 patent.[24]**

I have updated my market share lost profits calculations using the same methodology described in the Bero Report. In particular, I have quantified Douglas' lost profits on 50% of Buyers' infringing sales, based on the estimated number of Buyers snowplow assembly units. My analysis herein updates the quantification based upon updated available sales data, and my market share lost profits calculation is summarized on **Schedule A**.

    **1.    Buyers' infringing sales through April 15, 2011 – approximately ▇▇ million in sales and approximately ▇▇ snowplow assembly units subject to lost profits.[25]**

At the time of the Supplemental Bero Report, Buyers had produced sales data showing that its infringing sales were approximately ▇▇ million through March 2010, and an additional ▇▇ million for the period of April 2010 through September 2010, for a total of approximately ▇▇ million.[26]

On November 8, 2013, Buyers' counsel provided Douglas' counsel with a summary of the infringing sales dollars by month and lift frame units sold by product by month from October 2010 through April 15, 2011, the date the '700 patent expired.[27] These sales are summarized on **Schedule F**.

---

[23] **Schedule B**.
[24] **Schedule A**.
[25] **Schedule A**.
[26] Bero Supplemental Report **Schedules 1.0** through **4.0**. As noted on **Schedule 4.0** of the Bero Supplemental Report, I also estimated that Buyers had approximately ▇▇▇▇ of additional infringing sales in October 2010 through October 15, 2010.
[27] Letter from Buyers' counsel to Douglas' counsel dated November 8, 2013. On January 6, 2014, Buyers' counsel provided Douglas' counsel with a letter in which it corrected the lift frame units information for this period, and the corrected lift frame unit amounts are reflected on **Schedule F**.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

In total, Buyers infringing sales were approximately ▮▮▮ million and its estimated total snowplow assemblies subject to lost profits were approximately ▮▮▮ units.[28]

### 2. Updated Douglas information

At the time of the Bero Report, Douglas had provided sales and cost information for its various plow models from 2007 through July 1, 2010.[29] I used this Douglas information to determine and calculate Douglas' lost profits and reasonable royalties. In January 2014, I spoke with Bob Young, Douglas' Controller and Treasurer, to obtain an understanding of whether the relevant Douglas sales and financial information I used and relied on in the Bero Report changed significantly for the period of July 2010 through April 15, 2011. Based on my discussion with Mr. Young, I understand the following:



- ▮▮▮

- ▮▮▮

- ▮▮▮

- Douglas' estimated market share in 2010 and 2011 was approximately 60%.[32]

- ▮▮▮

- ▮▮▮

- Douglas continued to make the snowplows I included in my analysis.[34]

---

[28] **Schedule A**. As described on **Schedule A**, Buyers has not provided complete data for the period of April 2010 through September 2010 and I have calculated the number of units for this period based on the available data.
[29] As summarized primarily on the **Schedules 10, 11, 12, 13** and **14** series of the Bero Report through July 1, 2010.



[32] This is consistent with **Schedule 20.0** of the Bero Report.
[33] This is consistent with **Schedule 22.0** of the Bero Report.
[34] These models are summarized in the **Schedule12 series** of the Bero Report.

Based on my discussions with Mr. Young, it appears reasonable and conservative to use the 2010 Douglas sales information included in the Bero Report to calculate lost profits for the period of April 2010 through April 15, 2011.

  **B.**  **Supplemental Opinion: A reasonable royalty rate for the infringement of the '700 patent is ▄▄ of Buyers' snowplow sales. Corresponding market share reasonable royalty damages approximate ▄▄ million.[35] In the alternative to market share damages, reasonable royalty damages approximate ▄▄ million from the infringement of the '700 patent.[36]**

My analysis with regard to the reasonable royalty rates in this matter is contained in the Bero Report. As described above, in the Bero Report I calculated damages for the '700, '530 and '978 patents as the Attachment / Detachment patents, and my opinion was that the royalty rate for the Attachment / Detachment patents was ▄▄ of Buyers infringing sales.[37]

    **1.**  **▄▄ royalty rate for the pioneering '700 patent**

As noted above, the '700 patent is the pioneering Attachment / Detachment Patent providing the distinguishing advantage of the simple and easy way to connect and disconnect the entire snowplow assembly. I testified at the October 2010 trial that a reasonable royalty rate for both the '530 and '978 patents would be between ▄% and ▄% of Buyers infringing sales.[38] Also, as noted above, Douglas was awarded approximately $▄▄ in royalty damages for the '530 patent and the same amount for the '978 patent at the October 2010 trial, which calculates to an effective royalty rate of approximately ▄% of Buyers' infringing sales for each patent and a combined ▄% for both patents.[39]

Based on my opinion in the Bero Report that a reasonable royalty for the Attachment / Detachments patents is ▄% of Buyers infringing snowplow sales, and my trial testimony as noted above, in which I testified that the combined royalty rate for the '530 and '978 patents would be approximately ▄% to ▄%, the '700 patent royalty rate approximates ▄% to ▄% of Buyers infringing snowplow sales. Given that the effective royalty rate awarded at trial by the jury for the '530 and '978 patents was approximately ▄% of Buyers' infringing sales, the reasonable royalty rate for the '700 patent is ▄▄% of Buyers' infringing sales. This ▄% reasonable royalty rate is

---

[35] **Schedule A**.
[36] **Schedule B**.
[37] Bero Report 47-63.
[38] Bero trial testimony 3-C-25 through 3-C-27.
[39] **Schedule G2**.

on the lower end of the ▮% to ▮% range described above, takes into account the royalties awarded by the jury for the '530 and '978 patents, and is consistent with my understanding that the '700 patent is the pioneering or foundational patent of the three Attachment / Detachment patents.[40]

## IV. CONCLUSION

My opinions and analyses contained herein are based upon information that is presently known to me. If additional information is made available, I may update my opinions and analyses accordingly. For example, I will provide updated calculations or interest calculations as appropriate.

Respectfully submitted,

*[signature]*

Richard F. Bero, CPA, CVA
January 17, 2014

---

[40] Bero Dep. 43-44 and 134-135; Bero trial testimony 3-C-28 and 3-C-31.



# RICHARD F. BERO, CPA, CVA

N16 W23217 Stone Ridge Drive, Suite 250, Waukesha, WI 53188
Phone – (262) 522-7922   Fax – (262) 522-7938
rbero@berogroup.com

## *PROFESSIONAL EXPERIENCE:*

**The BERO Group / Corporate Financial Advisors, LLC**
Managing Director
Waukesha, Wisconsin                                              December 1995-Present

Mr. Bero founded Corporate Financial Advisors in 1995 and served as Managing Director. The BERO Group evolved from Corporate Financial Advisors and Mr. Bero serves as Managing Director. Mr. Bero provides financial and accounting consulting services and expert testimony pertaining to valuation issues and financial damages issues.

**Coopers & Lybrand**
Manager – Litigation & Claims Services
Milwaukee, Wisconsin                                                                    1994-1995

Mr. Bero was the Manager and Practice Leader of the Coopers & Lybrand Milwaukee Litigation & Claims Services practice.

**Peterson Consulting Limited Partnership**
Executive Consultant
Milwaukee, Wisconsin                                                                    1989-1994
Chicago, Illinois                                                                              1987-1989

Mr. Bero provided litigation and business dispute support services to trial attorneys and corporate counsel.

## *EDUCATION:*

**University of Wisconsin–Madison**                                                     1986
Bachelor of Business Administration
Accounting and Finance

*ACTIVITIES/OTHER:*

    Intellectual Property Valuation Instructor – National Association of Certified Valuation Analysts

    Licensing Executives Society – Co-Chair Wisconsin Chapter – 2006-2008

    Intellectual Property Owners Association – Damages Committee Member – 2004-present

    National Association of Certified Valuation Analysts, CVA

    Wisconsin Institute of Certified Public Accountants:

        Board of Directors – 2000-2002

        Chairman CPA's In Industry – Committee 1997-1999

        Outstanding Committee Chairperson Award – 1997-1998

    American Institute of Certified Public Accountants

    Becker CPA Review – Instructor 1995-1998

    Illinois Certified Public Accountant Society

*PRESENTATIONS:*

| | |
|---|---|
| May 2013 | Hot Topics in Patent Royalty Damages<br>Business Valuation Resources Online Symposium on Economic Damages: Part 3<br>Chicago, Illinois |
| September 2011 | WestLegalEdcenter Webinar<br>Recent Patent Damages Decisions – What is the Effect |
| August 2011 | WestLegalEdcenter Webinar<br>Constructing Royalty Rate Damages |
| January 2011 | The Evolution of the Entire Market Value Rule<br>Business Valuation Resources Webinar Series on Advanced Topics in Lost Profits Damages<br>Chicago, Illinois |
| September 2010 | Patent Damages: Managing the Risks and Contingent Costs<br>Business Valuation Resources / Morningstar Summit on Best Practices in Valuing Intellectual Property<br>Chicago, Illinois |
| March 2010 | Tianjin Bar Association<br>Damage Analysis Techniques and Considerations in U.S. Patent Litigations<br>Tianjin, China |
| March 2010 | Beijing Lawyers Association<br>Damage Analysis Techniques and Considerations in U.S. Patent Litigations<br>Beijing, China |

| | |
|---|---|
| December 2009 | Milwaukee Bar Association<br>Constructing Royalty Rate Damages<br>Milwaukee, Wisconsin |
| October 2009 | Michigan Intellectual Property Law Association<br>Constructing Royalty Rate Damages<br>Detroit, Michigan |
| June 2009 | Licensing Executive Society – Chicago Chapter<br>Constructing Royalty Rates<br>Chicago, Illinois |
| March 2009 | Milwaukee Bar Association<br>Patent Infringement Damages – Working Effectively With Your Damages Expert<br>Milwaukee, Wisconsin |
| January 2009 | Wisconsin Intellectual Property Law Association<br>Constructing Royalty Rates<br>Milwaukee, Wisconsin |
| November 2008 | Licensing Executive Society – Minnesota Chapter<br>Constructing Royalty Rates<br>Minneapolis, Minnesota |
| October 2008 | American Intellectual Property Law Association – Annual Meeting<br>Constructing Royalty Rates<br>Washington, D.C. |
| October 2008 | Minnesota Intellectual Property Law Association<br>Constructing Royalty Rates<br>Minneapolis, Minnesota |
| June 2008 | Presentation to Judges and IP attorneys in China<br>The Development of Patent Damages<br>Shenzhen, China |
| May 2008 | Licensing Executive Society International – Spring Conference<br>Avoiding Intellectual Property Hurdles in the U.S. - The View from China<br>Roundtable Moderator<br>Chicago, Illinois |
| March 2008 | Marquette Law School<br>Royalty Damages in Patent Litigation<br>Guest Instructor – IP Litigation Class<br>Milwaukee, Wisconsin |
| October 2007 | Guarding the Treasure: IP Valuation & Remedies Panelist<br>Sponsored by Foley & Lardner<br>New York, New York |

| | |
|---|---|
| October 2007 | Shanghai Bar Association<br>Patent Litigation & Valuation – Real World Examples in the U.S.<br>Shanghai, China |
| October 2007 | Shenzhen Society of Certified Public Appraisers<br>Intellectual Property, Valuation and Damages Analysis – Real World Examples in the U.S.<br>Shenzhen, China |
| May 2007 | Shanghai Intellectual Property Service Center<br>Intellectual Property in the U.S.: Opportunities, Valuation & Litigation<br>Shanghai, China |
| May 2007 | Shenzhen Bar Association<br>Managing and Understanding the Value of IP – Real World Examples in the U.S.<br>Shenzhen, China |
| October 2006 | China Hi-Tech Fair 2006<br>Protection of Chinese Intellectual Property in the U.S.<br>Patent Damages & Ways to Avoid Infringement<br>Shenzhen, China |
| August 2006 | Nanshan Sub-Bureau of Intellectual Property Administration<br>Intellectual Property Value Issues in the United States an Overview for Chinese Businesses<br>Shenzhen, China |
| March 2006 | Milwaukee Bar Association<br>Hindsight is 20/20: Developing & Presenting Damages in Intellectual Property Litigation and Complex Litigation<br>Milwaukee, Wisconsin |
| December 2005 | Wisconsin Intellectual Property Law Association<br>Intellectual Property Damages Update & Discussion<br>Pewaukee, Wisconsin |
| October 2005 | Licensing Executives Society – Annual Meeting<br>Facilitator: Advanced Practices Working Session III: To Sue or Not? How to Decide<br>Phoenix, Arizona |
| September 2005 | Digital Fabrication 2005 Seminar<br>Panel Discussion: Intellectual Property<br>Baltimore, Maryland |
| September 2005 | Intellectual Property Owner's Annual Meeting<br>Patent Infringement Damages Update and Discussion<br>Seattle, Washington |

   April 2005      Licensing Executives Society – Wisconsin Chapter
               What's Reasonable: Royalty Damages in Patent Litigation
               Fond Du Lac, Wisconsin

**EXPERT WITNESS TESTIMONY:**

*Split Pivot, Inc. v. Trek Bicycle Corporation*
United State District Court - Western District of Wisconsin
December 2013 (Deposition Testimony)

*Cognex Corp., and Cognex Technology & Investment, LLC v. Microscan Systems, Inc., and The Code Corporation*
United States District Court – Southern District of New York
September 2013 (Deposition Testimony)

*In Re Innovatio IP Ventures, LLC, Patent Litigation*
United States District Court – Northern District of Illinois
September 2013 (Trial Testimony)
September 2013 (Deposition Testimony)

*Nordock, Inc. v. Systems, Inc.*
United States District Court - Eastern District of Wisconsin
March 2013 (Trial Testimony)
January 2013 (Deposition Testimony)
August 2012 (Deposition Testimony)

*Sloan Valve Company v. Zurn Industries, Inc. and Zurn Industries, LLC*
United States District Court - Northern District of Illinois
March 2013 (Deposition Testimony)

*ABT Systems, LLC, et al. v. Emerson Elec. Co.*
United States District Court - Eastern District of Missouri
February 2013 (Trial Testimony)
July 2012 (Deposition Testimony)

*Illumination Management Solutions, Inc. v. Ruud Lighting, Inc.*
United State District Court - Eastern District of Wisconsin
October 2012 (Deposition Testimony)

*Rockwell Automation, Inc. et al. v. WAGO Corporation, et al.*
United State District Court - Western District of Wisconsin
October 2012 (Trial Testimony)
August 2012 (Deposition Testimony)

*Raymond Caluori v. One World Technologies, Inc.*
United States District Court - Central District of California
June 2012 (Trial Testimony)
January 2012 (Deposition Testimony)

*Michael Foods, Inc. v. National Pasteurized Eggs, Inc.*
United States District Court - Western District of Wisconsin
June 2012 (Trial Testimony)
April 2012 (Deposition Testimony)

*Thermal Design, Inc. v. American Society of Heating, Refrigerating, and Air Conditioning Engineers, Inc.*
United States District Court - Eastern District of Wisconsin
May 2012 (Deposition Testimony)

*Wausau Homes Incorporated v. Everest Builders of Minocqua, Inc.*
United States District Court - Western District of Wisconsin
April 2012 (Deposition Testimony)

*Quad/Graphics, Inc. v. One2One Communications, LLC, et al.*
United States District Court - Eastern District of Wisconsin
December 2011 (Trial Testimony)

*Thermal Design, Inc. v. Guardian Building Products, Inc., et al.*
United States District Court - Eastern District of Wisconsin
December 2011 (Deposition Testimony)

*Thilmany, LLC v. Appleton Papers Inc.*
Wisconsin Circuit Court - Outagamie County
February 2011 (Deposition Testimony)

*Toshiba Corporation v. Imation Corp., et al.*
United States District Court - Western District of Wisconsin
December 2010 (Deposition Testimony)

*Douglas Dynamics v. Buyers Products Company*
United States District Court - Western District of Wisconsin
October 2010 (Trial Testimony)
September 2010 (Deposition Testimony)

*American Medical Systems, Inc. and Laserscope v. Biolitec, Inc., et al.*
United States District Court - District of Massachusetts
April 2010 (Deposition Testimony)

*St. Clair Intellectual Property Consultants v. Hewlett Packard Company, et al.*
United States District Court - District of Delaware
March 2010 (Deposition Testimony)

*American Medical Systems, Inc. and Laserscope v. Laser Peripherals, LLC*
United States District Court - District of Minnesota
March 2010 (Deposition Testimony)

***PUBLICATIONS:***

    April 2011 – CCH Business Valuation Alert, "The *Uniloc* Case: 25 Percent Rule of Thumb Rejected"

    The Comprehensive Guide to Lost Profits, "Lost Profits Damages in Patent Infringement Lawsuits" (Chapter 19, 2011 ed., BVR Publications)

    August 2009 – IP Law360 – "Demand for the Patented Product – Lower Bar?"

    The Comprehensive Guide to Lost Profits, "Lost Profits Damages in Patent Infringement Lawsuits" (Chapter 12.1, 2009 ed., BVR Publications)

    October 2008 – AIPLA White Paper – "Constructing Royalty Rates"

    February 2008 – IP Law360 – "IP Litigation in China and the U.S."

    Global Intellectual Property Asset Management Report, "Intellectual Property Metrics Today: It Can Be Done" (June 2005 and July 2005)

    Proving and Pricing Construction Claims, "Claims for Lost Profit" (Chapter 14, 2nd ed., 1996, Wiley Law Publications)