IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

DOUGLAS DYNAMICS, LLC,

    Plaintiff,                                          OPINION AND ORDER

    v.                                                   09-cv-261-wmc

BUYERS PRODUCTS COMPANY,

    Defendant.
_____

       A final pretrial conference for damages attributable to infringement of the '700 patent was held April 3, 2014. Plaintiff appeared by attorneys Aaron Olejniczak and Christopher Liro; defendant appeared by attorneys Thomas Shunk, Christina Moser and Andrew Clarkowski. Generally, the court confirmed both sides will be held to their original expert reports, testimony and arguments at the original damage trial, as supplemented by their updated expert reports and/or altered by changes in the law. More specifically, the court held that: Douglas cannot now claim that the '538 and '978 patents had no impact on snow plow assembly sales; nor can Buyers now claim that those patents were the principal drivers of snowplow assembly sales. Having said that, to the extent the law on recovery of damages has changed, the court will do its best to accommodate those changes during the trial. In addition, the court ruled as follows with respect to both sides' motions in limine.

I. Douglas's Motions in Limine

A. *No. 15*: To exclude supplemental expert report of Andrew Finger (dkt. #643)

Douglas asks the court to exclude evidence and opinions from the January 31, 2014 Supplemental Expert Report of Andrew Finger ("2014 Finger Report") in its entirety. Douglas's central argument is that the parties previously represented, and the court ordered, that they would update their expert reports to incorporate additional sales, but not adopt previously undisclosed theories or methods. In contrast to that order, Douglas argues that the 2014 Finger Report states various new theories based on new evidence, including new analysis of marketing materials and criticism of Douglas' expert Bero's methods and the relative benefits of the attachment/detachment systems in the '530 and '978 patents, rather than the freestanding or unilateral removal of the snowplow assembly disclosed by the '700 patent. The 2014 Finger Report also theorizes based on *BIC Leisure Products*, 1 F.3d 1214, that the first and second *Panduit* factors[1] do not apply because Buyers does not compete with Douglas, which was not a theory in his earlier report. Finally, the 2014 Finger Report "brushes aside" the 25% rule for royalty purposes and places a starting point for royalties at 1% based on the Federal Circuit's

---

[1] In *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978), the court held, and the Federal Circuit has repeatedly endorsed since, that a patentee may be entitled to lost profits damages upon proof of the following elements by a preponderance of the evidence:
    (1) demand for the patented product;
    (2) absence of acceptable non-infringing substitutes;
    (3) manufacturing and marketing capabilities to exploit the demand; and
    (4) amount of profit it would have earned.
*Id*. at 1156; *see also Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (pointing to *Panduit* test as "a useful, but non-exclusive, way for a patentee to prove entitlement to lost profits damages").

rejection of the 25% rule in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).

Buyers responds generally that all Finger did was reiterate his previous opinions while limiting them to the '700 patent. Responding specifically to Douglas's objections, Buyers states that:

- Finger relied on his analysis of marketing materials in reaching his original opinion (ECF 306, at 5) and during his deposition (ECF 335, at 197-201), or alternatively, that Finger's testimony is a permissible supplement since it responds to Bero's altered opinions and the testimony of Douglas' own witnesses at the previous trial.

- Finger's original opinion discusses at length his position that the '700 patent does not drive demand, and that his previous testimony was based on Douglas's own claims.

- Finger's market segment analysis was fully explicated in the previous trial, and it is only the citation to *BIC Leisure Products* to which Douglas objects.

- Finger's allocation opinion is not new, because his original report did not rely on the 25% rule to value the '700 patent.

Finally, Buyers argues that Douglas cannot show it is harmed in any way.

The court is not prepared to exclude Finger's report in its entirety. It will, however, respond to each of Douglas's specific objections. *First,* with respect to Finger's analysis of marketing materials and his more general opinions as to which of Douglas's patents drive demand, the court will not prevent Finger from testifying, consistent with

his previous opinions and testimony, that *none* of the '700, '530 and '978 patents are particularly important. Finger may not, however, present any comparison of the relative importance of the three patents inconsistent with his previous testimony. *Second*, with respect to Finger's market segment analysis, the court will certainly preclude mention of the *BIC Leisure Products* case specifically, but it will not preclude him from presenting his analysis. *Third*, the objection to Finger's reliance on the 25% rule is well-taken. Given the change in the law and given that both sides represent they can arrive at their royalty calculations without use of the 25% rule, the court holds that neither side is permitted to refer to the 25% rule throughout the trial, whether in opening, direct, cross-examine or closings.

      B.    *No. 16*: Preclude Finger's Expert Opinion re: Lost Profits Damage (dkt. #645)

Douglas asks the court to exclude the opinion and testimony of Finger regarding lost profits damage. Douglas argues that its own expert, Bero, uses the well-established method of substituting market share evidence for the second *Panduit* factor, but Finger's new expert report rests entirely on the first and second *Panduit* factors, fails to apply the law correctly and is inadmissible under Fed. R. Evid. 702. Specifically, Douglas argues that:

- Finger's reports assume that the first *Panduit* factor requires demand for the patented *feature*, not just for the patented product, which is incorrect under Federal Circuit law. *See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009) (first factor "does not require any allocation of

consumer demand among the various limitations recited in a patent claim" but asks only "whether demand existed for the 'patented product'").

- Finger's reports assume that the second *Panduit* factor requires an absence of acceptable, non-infringing alternatives, but the law states that a patent owner can recover lost profits even if acceptable, non-infringing substitutes are available under the market share approach.  Additionally, Finger incorrectly opines on alternatives to prospective customers, rather than to Buyers.
- Finger's reports incorrectly argue that Buyers' lower selling price segments the market such that the snowplows are not direct competitors.

Buyers responds that Finger's testimony is essentially that Douglas has failed the most basic legal requirement for proving lost profits: it has not proven the causal connection between the patented feature and consumer demand.  It argues that Douglas's language from *DePuy Spine* addressed only a single subset of the question of how the market would have behaved absent infringement and given all available alternatives.  Additionally, it argues that Douglas is asking the court to shortcut the required nuanced, fact-intensive analysis of lost profits, particularly as properly analyzing the definition of the relevant market, and the court cannot rely on the Federal Circuit's finding of competition for permanent injunction purposes in order to find competition for lost profits purposes.  Finally, it argues that in analyzing *Panduit* factors one and two, Finger has responded directly to Bero's analysis and his report cannot now be excluded based on Bero's errors.

The court agrees that Finger may not misstate the law and opine that lost profits analysis requires demand for the patented feature, not the product. Finger is free, however, to disagree with Bero's market-share analysis and argue generally that Buyers and Douglas were competing in separate marketplaces and that, in the market in which Buyers was competing, the sales of Douglas's patented product would not have replaced its sales.

C.  *No. 17*: Exclude Irrelevant Evidence of Reasonable Royalty Rates (dkt. #647)

Douglas asks the court to exclude Finger's testimony or evidence as to an appropriate reasonable royalty rate for the '700 patent. Douglas states that Finger's September 2010 report uses the 25% rule, which is now inadmissible under Fed. R. Evid. 702 based on the Federal Circuit's decision in *Uniloc*.

Buyers points out that its references to the 25% rule in the September 2010 report were all based on Bero's original reliance on that rule and, regardless, Finger's original report ultimately relied not on the 25% rule but instead on the Curtis settlement. Finally, Buyers argues that Douglas's motion is overbroad, because it seeks to exclude *all* of Finger's reasonable royalty opinion when much of that is a rebuttal to Bero's own analysis.

Consistent with the ruling on Douglas's Motion in Limine No. 15, *supra*, the court grants this motion only to the extent that neither side may refer to the 25% rule.

D. *No. 18*: Exclude Curtis Settlement Agreement under Fed. R. Evid. 403 and 408[2] (dkt. #649)

Douglas renews its request that the court exclude the Curtis Settlement Agreement, which settled prior patent litigation under the '700 patent in this district and in the District of Massachusetts and included non-exclusive, cross-licenses. The court excluded this evidence from the original damage trial principally because the '700 patent was not part of that first trial. Nevertheless, Douglas argues that the Federal Circuit has now clarified that such settlement agreements are *not* admissible except in rare instances. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) (settlements are generally not admissible to establish reasonable royalty damages but may be admissible when "uniquely relevant and reliable," as in *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010)). Here, Douglas argues that the potential probative value of the Curtis Settlement Agreement is dubious, since the agreement includes *Douglas's payments for the Curtis patents*, rather than simply reflecting the economic footprint of the '700 patent.

Buyers responds that the Federal Circuit has not categorically barred settlement agreements. Here, it asserts the Curtis Settlement Agreement is relevant and admissible because: (1) Bero relied on the Curtis license; (2) the license is relevant to defining the market; (3) the contemporaneous documents establish that Curtis was licensed under the '700 patent and had to mark its products with the '700 patent number; (4) the license is

---

[2] Buyers has also moved for confirmation that the Curtis License is *not* excluded in limine. (Dkt. #625.)

relevant to reasonable royalty calculation because it represents the only attempt to place a value on the '700 patent.

At this time, it does not appear that the Curtis Settlement Agreement is uniquely relevant and reliable, not because it was arrived at in a litigation setting, but because it was arrived at by an effort to value cross-licenses on the Curtis and the '700 patents. The mere fact that it appears to be the only such license available does not justify its admission under *LaserDynamics*. Buyers is free to make a proffer demonstrating that the Curtis Settlement Agreement is in fact uniquely relevant and reliable, and the parties may refer to the fact that the Curtis Settlement Agreement creating a cross-license arrangement, including use of the '700 patent invention, exists, but the actual value of the license in that agreement is excluded.

E.   *No. 19*: **Preclude Evidence re: Patent Reexam (dkt. #651)**

Finally, Douglas asks us to preclude Buyers from offering anything regarding the pending reexamination of the '700 patent. Because the court has already determined that the claims are infringed and valid as a matter of law, any evidence regarding the pending reexamination is entirely irrelevant and would confuse the jury, particularly since non-final reexamination proceedings do not demonstrate that a patent is likely invalid. *See Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) ("We take notice that the grant by the examiner of a request for reexamination is not probative of unpatentability.").

Buyers does not appear to argue that the reexamination is relevant. Instead, it argues that if the court allows Douglas to present evidence as to the procedural details

leading up to this trial, the court should allow the jury to hear the whole story, including the reexamination.

The court agrees that the pending reexamination is irrelevant to the jury's determination of damages for the infringement of the '700 patent. Likewise, all references to other procedural details are excluded (*see* discussion, *infra*).

II. **Buyers' Motions in Limine**

   A. *No. 14*: Exclude Evidence Regarding Prior Proceedings (dkt. #614)

In a motion closely related to Douglas's motion in limine No. 19, Buyers asks the court to exclude any evidence of prior proceedings, because they are irrelevant and would likely confuse the jury and prejudice Buyers. It concedes that infringement is relevant and asks the court to use language stating: "It has previously been determined that the combination of Buyers' SnowDogg snowplows with vehicles, after mounting, contains all the limitations set out in claims 45, 47, 48, 49 and 51 of the '700 patent."

Douglas argues that this information is important for damages purposes for the jury to hear about all three patents and how the potential damages relate to them. Next, it argues that Buyers' proposed language leaves out the patents' validity and seeks to mislead the jury by arguing indirect infringement under the pretext of a damages argument. Douglas requests that the court order Buyers not to argue or address indirect infringement to the jury. Finally, Douglas submits that it must be allowed to address:

- that its expert determined a rate for the '700 patent by first determining a rate for the '700, '530 and '978 patents;

- that the court previously determined that Buyers infringed the '530 and '978 patents, and that the proper amount of damages must account for previously-paid damages;

- that the court previously determined that Buyers' products infringe claims 45, 47, 48, 49 and 51 and that the court determined those claims to be valid.

Buyers is correct that most of the procedural details of this case would simply muddy the waters and would not be relevant. Generally speaking, then, the court excludes any evidence or discussion of procedural details. The parties are not to refer to prior proceedings, except for impeachment purposes. The exception to this general bar is that the court will instruct the jury that it previously: found infringement of claims 45, 47, 48, 49 and 51 of the '700 patent; found infringement of the '530 and '978 patents; and awarded damages as to those two patents. The jury will *not* be informed of the dollar amount of those awards, but may be told what the royalty percentage was for each patent, so as to prevent a double recovery.

B.  *No. 15*: Exclude Geographic References (dkt. #615)

Buyers asks the court to exclude any "inappropriate evidence" of the parties' geographic locations. It acknowledges that "basic geographic location of the parties and the association of witnesses with particular colleges and universities is typical background information and may be introduced at trial" but contends that in the previous trial, Douglas made particular statements that attempted to prejudice Buyers by referring to: (1) Buyers' engineer's connection to Ohio State, playing on the football rivalry between

Wisconsin and Ohio State; and (2) Douglas' Milwaukee-based employees, prejudicing the jury to attempt to "save local jobs."

Douglas responds that: (1) Buyers did not object to the Ohio State reference before and opened its direct of the engineer with the same fact; and (2) the reference to Milwaukee employees was innocuous and did not suggest any jobs were at stake, much less Madison jobs.

It is too far a stretch to argue that the reference to Ohio State, or to the fact that Douglas has employees in Milwaukee, will prejudice the jury. Buyers is free to object to specific arguments or testimony at trial, but it goes too far to say it is appropriate to preclude this background information on grounds of prejudice, and so this motion is denied. Should Buyers so request, the court is willing to ask questions about any such bias during voir dire.

    C.    *No. 16*: Exclude Non-Expert Damages Opinions (dkt. #616)

Buyers asks the court to exclude the lay testimony of Douglas's chief engineer, Gary Watson, arguing that he is an engineer without expertise in lost profits. Furthermore, Buyers argues that Douglas' expert declined to opine that Douglas was entitled to sales for lost parts and accessories, but Watson's previous testimony got into that area, and he should not be permitted to offer lay opinion testimony on a type of damages Douglas is not pursuing.

Douglas responds that Watson is not merely an engineer; his titles included Engineering Director, Quality Director and Assistant to the President. He has been in a decision-making role in product and market development since 1977, he has an MBA,

and he was designated as Douglas' 30(b)(6) representative on topics related to sales and marketing of '700 patent products.  He is involved in and informed of competitive and marketing assessments throughout the company, regularly attends industry trade shows to monitor the market and is involved in Douglas' market surveying activities to assess the company's market share and driving market forces.  He was also identified as having discoverable information related to damages and irreparable harm.  The testimony Watson offered in 2010 was provided to show Douglas' perspective in the context of a hypothetical negotiation as to a reasonable royalty rate.  And finally, if Buyers believes Watson is speculating, offering testimony without foundation or providing expert opinions, Buyers may object at that time.  Still, Douglas concedes that Watson was never disclosed as an expert witness in this lawsuit pursuant to Fed. R. Civ. P. 26(a)(A) and (C).

      The court will grant the motion to the extent that Watson may not provide expert opinions or testimony.  He may, however, offer lay opinion and state facts of which he has personal knowledge, based on his employment with Douglas.

      D.   *No. 17*: Exclusion of Undisclosed Opinions (dkt. #618)

      Buyers asks the court to exclude expert opinions not previously disclosed by Douglas.  Specifically, Buyers argues that Douglas' expert, Bero, "extemporized a new valuation opinion during his trial testimony when he realized he had not separately valued the patents."  Douglas responds that this motion is premature and that if Bero's testimony strays from his prior disclosures at any point, the court can address the specific testimony and objection at that time.

As a general rule, the court will hold the parties to their disclosures, so granting this specific motion is unnecessary. Buyers is, of course, free to object if Bero opines on something not previously disclosed. Its specific objection to Bero's calculation of the appropriate royalty rate is denied, however, because (1) Bero was allowed to break out his royalty calculations in light of the court's (ultimately erroneous) exclusion of the '700 patent from the first trial, (2) damages have been awarded on the other two patents, and (3) no objection was made at that time. Unless Buyers were willing to allow a retrial of all damages, including those for lost profits on the '538 and '978 patents, something its counsel declined to pursue at the final pretrial conference, then an explanation of the royalty break out is wholly appropriate. More generally, both sides should come prepared to point to the portions of their expert reports where their previous opinions are disclosed, so as to ensure sidebars are limited in nature.

E.   *No. 18*: **Limit Testimony of Dr. Garris (dkt. #619)**

Buyers asks the court to limit the testimony of Dr. Garris, but Dr. Garris is apparently no longer testifying in this case, according to Douglas. Thus, the court agrees with Douglas that this motion is moot.

F.   *No. 19*: **Exclude Expert Testimony that Reiterates Others' Opinions (dkt. #620)**

Buyers asks the court to exclude any of Bero's opinions that rest primarily or entirely on Douglas's own unsupported facts or opinions (the specific example it gives is the competitive pricing matrix at Schedule 23.10). Rather, Buyers argues that any underlying evidence or opinions must themselves be independently verified.

Douglas responds that Bero's opinions are based on well-established frameworks laid out in cases from the Federal Circuit and other courts, and that Bero merely relied on inputs from the parties to reach his opinions, citing *Tuf Racing Products v. American Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000), in which the court rejected a challenge to a CPA's earnings projections even though the projections were the product of financial information furnished by Tuf and assumptions given to him by counsel of the effect of termination on sales. The court reasoned that the *methodology* was within the competence of a CPA, notwithstanding the reliability of the data itself, and the court's role is generally limited to assessing methodology. Douglas argues that Buyers is free to question Bero about his reliance on specific pieces of financial and market information, to question fact witnesses or to challenge deposition designations, but that the court should not exclude his opinions on the grounds Buyers advocates.

Again, the court agrees with Douglas, and will deny this motion. Buyers is really making a blanket challenge to the underlying data with which Bero worked, not his methodology. Indeed, financial experts regularly rely on the facts, data and reasonably-informed opinions of clients and others in arriving at damage calculations, leaving for the jury to decide whether the underlying facts, data and opinion are true. If Buyers has a *particular* item it wants to challenge, it may do so before or during the trial itself.

G.   *No. 20*: Exclude Market Innovativeness Survey (dkt. #621)

Buyers asks the court to exclude argument, testimony and other evidence relying on the "Market Innovativeness Survey" published in 1997 and relied upon in Bero's original expert report. It contends that the study "does not say anything about a

particular hypothetical negotiation or reasonable royalty involving any particular technology, industry, or party" and should be excluded based on *Uniloc*.

Douglas agrees not to enter the study into evidence or refer to it before the jury so long as Buyers agrees to do the same. Douglas does contest Buyers' characterization of Bero's reliance on the study, however, arguing that Bero merely used it as a "reasonableness check" and that any exclusion of the study does not undermine Bero's opinion itself.

Given Douglas's concession, both parties are precluded from entering the 1997 study into evidence or referring to it before the jury. As for any argument that its absence wholly undermines Bero's report, the court disagrees.

H. *No. 21*: Exclusion of Undisclosed Direct Infringement Damages theories (dkt. #622)

Buyers asks us to exclude any damages theories offered by Douglas as to *direct* infringement, because all of its theories are currently directed at *indirect* infringement. Buyers' theory here is that it should be permitted to present evidence as to *mens rea* required for indirect infringement, arguing that the court must then dismiss Douglas' claim for indirect infringement and limit Douglas' damages calculation to whatever damages it can prove that it suffered from acts of direct infringement. The argument is premised in part on Buyers' contention that the Federal Circuit made no determination regarding the *scope* of Buyers' infringement; since the question of indirect and contributory infringement remains unresolved, Douglas can only recover damages for the *directly* infringing activities that it can prove.

Douglas points out, as this court has already found, that (1) the Federal Circuit ruled Buyers' products directly infringed and (2) there is no need for further evidence of indirect infringement at this point. Accordingly, Douglas contends that it should be allowed to prove up damages based on sales of Buyers' products without further distinction.

While Buyers has presented and preserved a clever legal argument, it can go nowhere at this stage of the lawsuit for legal, practical and factual reasons. The Federal Circuit held that Buyers' products contain each and every limitation of claim 45 as properly construed, without addressing the *mens rea* of indirect or contributory infringement at all. It is logically inconsistent to say that the Federal Circuit found that Buyers' products directly infringed the '700 patent, but that Douglas cannot now prove up damages based on those same products. In any event, there is *no* alternative use that could be made of the infringing snowplow assemblies (other than perhaps very expensive and unattractive lawn ornaments or outdoor sculpture). Certainly, the evidence is that these assemblies are bought and sold for *one* reason -- to attach to vehicles as contemplated for direct infringement of the '700 patent.

## I. *No. 22*: Exclude References to Profits in Excess of Proper Royalty Base (dkt. #624)

Buyers asks us to exclude argument, testimony and evidence referring to Buyers' total profit and/or sales or profit in excess of the proper royalty base, arguing that the entire market rule allows assessment of damages based on entire market value of the product only where the patented feature creates the basis for customer demand or the

value of the component parts and that, here, there is no justification for application of that rule to the facts of this case, particularly because it would unfairly prejudice the jury and artificially inflate damages calculations.

Douglas responds that the entire market value rule is not relevant in this case, and that the royalty base in Bero's analysis is Buyers' sales revenue of infringing vehicle-mounted snowplow assemblies, the same base used by Bero, Finger, and the court (in determining damages and royalties on the '530 and '978 patents, neither of which Buyers appealed). Douglas also argues that using the value is not prejudicial, because the claims cover, and the parties sell, complete vehicle-mounted snowplow assemblies. Finally, Douglas argues that the reports and testimony of Bero establish support for the notion that the '700 patent drives customer demand for the entire assembly.

This motion is in large part denied. Contrary to Buyers' argument, the court understands these plows to be sold to customers as complete snowplow assemblies (a single unit), not as individual parts. It will, however, grant the motion to the extent that Douglas may not refer at trial to the gross sales and profits derived from all of Buyers' businesses and products, but only to those related to snowplow assemblies.

J.  *Unnumbered* Motion in Limine (dkt. #625)

Buyers also moves in limine to confirm that the Curtis Settlement Agreement will not be excluded. The court addressed that above and reiterates here that Buyers may reference the fact that Douglas entered into a license on the '700 patent by settlement, but it may not introduce the amount or percentage of that license.

### III. *Daubert* Motion to Exclude Bero's Testimony (dkt. #612)

Buyers has also moved to exclude Bero's testimony entirely. In the court's view, the motion primarily criticizes the assumptions on which Bero relies. Buyers is free to challenge and dispute any assumptions underlying Bero's expert testimony, and the court will instruct the jury as to all experts that to the extent those experts rely on faulty assumptions in rendering opinions in this matter, they should discount the expert's opinion. The court will not, however, preclude Bero -- indeed, will not preclude either damages expert -- from testifying in an attempt to assist the jury in the difficult process of determining the appropriate amount of damages in this case.

### IV. Other Motions in Limine

At the final pretrial conference, the court requested that the parties advise it as to whether there are other motions in limine from the first trial of this matter that may have application to the upcoming trial. In particular, the court requests that the parties notify it of any motions in limine that were not fully addressed given the limited scope of the first trial and that still require rulings now. The parties should apprise the court of any such motions in limine by the end of the day on Monday, April 7, 2014.

### ORDER

IT IS ORDERED that:

(1) plaintiff's motion in limine No. 19 (dkt. #651) is GRANTED;

(2) plaintiff's motions in limine Nos. 15, 16, 17 and 18 (dkt. ##643, 645, 647, 649) are GRANTED IN PART and DENIED IN PART consistent with the opinion above;

(3) defendant's motion in limine No. 20 (dkt. #621) is GRANTED;

(4) defendant's motions in limine Nos. 15, 17, 19 and 21 and motion to exclude the testimony of Richard Bero (dkts. ##612, 615, 618, 620, 622) are DENIED;

(5) defendant's motion in limine No. 18 (dkt. #619) is DENIED AS MOOT;

(6) defendant's motions in limine Nos. 14, 16 and 22 and motion to confirm the Curtis License (dkts. ##614, 616, 624, 625) are GRANTED IN PART and DENIED IN PART, consistent with the opinion above; and

(7) the parties shall apprise the court not later than 5:00 p.m. CST on Monday, April 7, 2014, of any pending motions *in limine* that still require decision.

Entered this 4th day of April, 2014.

                          BY THE COURT:

                          /s/

                          _____
                          William M. Conley
                          District Judge