IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DOUGLAS DYNAMICS, LLC, | ) |
| Plaintiff | ) CIVIL ACTION NO. 3:09-cv-00261 |
| v. | ) Hon. William M. Conley |
| BUYERS PRODUCTS COMPANY, | ) <u>SEALED</u> |
| Defendant | ) |

I, RICHARD F. BERO, hereby declare that the following statements are made on personal knowledge and that I am competent to testify to the matters stated herein as follows:

1. I am the Managing Director of The BERO Group. I have been retained by Douglas Dynamics, LLC ("Douglas") in the above captioned case as an expert witness on damages issues.

2. I testified at trial in April 2014 as an expert witness in this case specific to Buyers Products Company's ("Buyers") infringement of Douglas' U.S. Patent No. RE 35,700 (the "'700 patent").

3. At trial, I understand that the jury awarded $9,750,000 in damages related to Buyers infringement of the '700 patent.[1]

4. I have been asked to calculate prejudgment interest through April 21, 2014[2] on the $9,750,000 awarded by the jury, assuming that the appropriate interest rate is the prime rate compounded monthly.

5. The annual prime rate as reported by the Federal Reserve changed several times from July 2007 through April 21, 2014. As of July 2007, the prime rate was 8.25%, and it dropped to 3.25% in December 2008, a rate at which it stayed through April 21, 2014. See

---

[1] Special Verdict Damages Form dated April 16, 2014.
[2] The date I understand the final judgment was entered in this matter.

- 1 -

**Schedule I9.0** for a summary of the different prime rates during the July 2007 through April 21, 2014 timeframe.

6. I understand the jury was asked to provide a single amount of damages at the April 2014 trial and was not asked to indicate any damages theory or to apportion damages over time. For purposes of my prejudgment interest calculation, I have been asked to calculate interest by distributing the total damages award over the damages period by pro-rating damages based on Buyers' infringing sales per month. In my opinion, this is a reasonable assumption under the circumstances.

7. I prepared 3 expert reports in this matter, that covered 3 different periods. My first expert report (the "Bero Report") was dated August 25, 2010, and covered Buyers infringing sales from July 2007 through March 2010 ("Period 1"). My second expert report (the "Supplemental Bero Report") was dated October 6, 2010, and covered Buyers infringing sales from April 2010 through September 2010 (the "Period 2"). My third expert report (the "Second Supplemental Bero Report") was dated January 17, 2014, and covered Buyers infringing sales from October 2010 through April 15, 2011 ("Period 3"), when the '700 patent expired.

8. For Period 1 infringing sales by month, I use the monthly infringing sales as contained on **Schedule 16.1** of the Bero Report.

9. For Period 2 infringing sales by month, I have apportioned the total sales for these six months to each of the months based on the average sales for the same months in 2008 and 2009, as shown on **Schedules I10.0** and **I10.1**. This estimate is necessary, because, as described in the Second Supplemental Bero Report, Buyers provided total sales for this six-month period, but the Buyers detailed sales data provided for Period 2 does not provide the sales data needed for a monthly breakdown.

10. For Period 3 infringing sales by month, I use the Buyers detailed invoices provided for this period to determine the amount of infringing sales in each month.

11. I have summarized the infringing sales by month from July 2007 through April 15, 2011 on **Schedule I2.0**. As shown on **Schedule I2.0**, the total infringing sales from July 2007 through April 15, 2011 were $35,983,454, the same as the total infringing sales set forth in the Second Supplemental Bero Report and at the April 2014 trial.

12. As shown on **Schedule I2.0**, I have divided the sales for each month by the total infringing sales of $35,983,454 to determine the percentage of sales made during that month as a percentage of the total infringing sales. I have then multiplied each month's percentage of sales by $9,750,000, to calculate the damages by month.

13. I then multiplied each month's calculated damages by a compounded interest factor, which takes the applicable prime interest rate for that month and adjusts it to account for monthly compounding, to calculate the prejudgment interest through April 21, 2014, the date I understand the Court entered the judgment in this case. These calculations are shown on **Schedule I2.0**.

14. As shown on **Schedules I1.0** and **I2.0**, the total amount of prejudgment interest related to the damages determined for the '700 patent in the April 2014 trial is $1,526,100.

15. I also testified at trial in October 2010 as an expert witness in this case specific to Buyers Products Company's ("Buyers") infringement of Douglas' U.S. Patent No. 5,353,530 (the "'530 patent") and Douglas' U.S. Patent No. 6,944,978 (the "'978 patent").

16. At trial, I understand that the jury awarded $509,124 in damages for the '530 patent and $509,124 in damages for the '978 patent, for a total of $1,018,248 of damages, related to Buyers infringement of the '530 and '978 patents.[3]

---

[3] Special Verdict Damages Form dated October 15, 2010.

17. I have been asked to calculate prejudgment interest through September 28, 2011[4] on the $1,018,248 awarded by the jury, assuming that the appropriate interest rate is the prime rate compounded monthly.

18. As with the 2014 verdict, I understand the jury was asked to provide a single amount of damages at the October 2010 trial for the '530 patent and '978 patent. For purposes of my prejudgment interest calculation, I have been asked to calculate interest by distributing the total damages award over the damages period by pro-rating damages based on Buyers' infringing sales per month. In my opinion, this is a reasonable assumption under the circumstances.

19. I have summarized the infringing sales by month from July 2007 through October 15, 2010 for the '530 and '978 patents on **Schedule I5.0**. As shown on **Schedule I5.0**, the total infringing sales from July 2007 through October 15, 2010 were $30,840,081, the same as the total infringing sales set forth in the Supplemental Bero Report and at the October 2010 trial.

20. As shown on **Schedule I5.0**, I have divided the sales for each month by the total infringing sales of $30,840,081 to determine the percentage of sales made during that month as a percentage of the total infringing sales. I have then multiplied each month's percentage of sales by $1,018,248, to calculate the damages by month.

21. I then multiplied each month's royalty damages by a compounded interest factor, which takes the applicable prime interest rate for that month and adjusts it to account for monthly compounding, to calculate the prejudgment interest through September 28, 2011, the date I understand the Court entered the judgment in this case. These calculations are shown on **Schedule I5.0**.

---

[4] The date I understand the final judgment was entered in this matter.

22. As shown on **Schedules I4.0** and **5.0**, the total amount of prejudgment interest related to the damages determined for the '530 and '978 patents in the October 2010 trial is $71,936.

23. I have also been asked to calculate post-judgment interest from September 29, 2011 through August 29, 2012[5] on the $1,018,248 awarded by the 2010 jury. Consistent with 28 U.S.C. § 1961, the interest rate I used to calculate post-judgment interest was the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment, compounded annually.

24. The 1-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System for the week of September 23, 2011 was 0.10%. As shown on **Schedule I7.0**, the total amount of post-judgment interest related to the September 2011 judgment of $1,018,248 is $916.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing statements are true and correct.

Signed this 19th day of May 2014 at Waukesha, Wisconsin.

_____
RICHARD F. BERO

---

[5] The date I understand Buyers paid the $1,018,248 judgment (excluding interest).